# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICTOR M. VIERA,** | : CIVIL NO. 1:13-CV-02424 |
| **Plaintiff** | : (Judge Rambo) |
| v. | : |
| **WILLIAM T. WILLIAMS, et al.,** | : |
| **Defendants** | : |

# **M E M O R A N D U M**

Plaintiff Victor M. Viera ("Plaintiff") an inmate incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview") in Bellefonte, Pennsylvania, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff named the following Defendants in this action: Dr. John T. Symons, Dr. Christina Doll, Corizon (a healthcare services provider), Wexford Health Services, and William T. Williams.[1] Plaintiff alleges that Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by acting with deliberate indifference to serious medical injuries he suffered from tripping and falling while on the way to receive insulin treatment. (Id. at 3–8.)

---

[1] Plaintiff also originally named Dr. Michael Goubran and PHS Correctional Healthcare as defendants in the complaint. (Doc. 1 at 2.) However, PHS Correctional Healthcare has since been identified as an alias for Corizon, and Michael Goubran has been dismissed from this action due to Plaintiff's inability to provide an accurate address to effect service. (*See* Docs. 21, 73.)

Before the Court are three motions to dismiss the Complaint for failure to state a claim, filed by three sets of Defendants. (Docs. 21, 31, 66.) For the reasons set forth below, the motions will be granted.

**I.      Background**

Plaintiff alleges that he suffers from several chronic medical disorders, most relevant of which is diabetes. (Doc. 1 at 3.) In February, 2012, while on his way to receive his insulin treatment, Plaintiff tripped over a cracked and uneven area of sidewalk, twisting his right ankle. (*Id.*) Plaintiff was then examined by a physician's assistant, who prescribed anti-inflammatory and antibiotic medication and advised Plaintiff to keep his foot elevated and apply ice to the area to control the swelling. (*Id.*) Plaintiff states that for the next seven months his ankle would often swell up again, and that although he was able to control the swelling by elevating his foot, the pain would remain. (*Id.* at 4.) When Plaintiff notified prison medical practitioners of his pain, they told him that it was due to his "uncontrolled" diabetes and did not offer any other treatment for it. (*Id.*)

On September 11, 2012, Plaintiff experienced swelling of his right leg, foot, and ankle and was admitted to the infirmary. (*Id.*) There, he was examined by Defendant Christina Doll, who treated Plaintiff with intravenous antibiotics, anti-

inflammatory medication, Motrin, and periodic application of ice to the swelling. (*Id.*) Doll ordered x-rays of his leg, which showed no fracture, and also blood tests. (*Id.*) Nearly two weeks later, Doll informed Plaintiff that they still did not know what was wrong with him, and that more tests were being done. (*Id.*) At that time, Plaintiff requested to be sent to a hospital for emergency care, but Doll denied this request, stating that he was not in an emergency condition. (*Id.*) On September 25, 2012, Plaintiff signed himself out of the infirmary, and was given medication for the swelling and pain by a physician's assistant. (*Id.*)

Shortly thereafter, Defendant John Symons called Plaintiff to his office to discuss medication renewals. (*Id.*) Plaintiff informed Symons that he was still experiencing a lot of pain in his ankle and the swelling was worse, and he again requested to be sent to a hospital or an orthopedic clinic. (*Id.* at 4–5.) Symons denied this request, and responded that Plaintiff seemed to have gout and ordered a cane for him to aid his ability to walk. (*Id.* at 5.)

On November 14, 2012, Plaintiff was again admitted to the infirmary after his ankle became "extremely swollen" and he was experiencing "substantial amounts of pain." (*Id.*) Doctor Michael Goubran examined Plaintiff with Doll present. (*Id.*) Goubran told Plaintiff that the swelling was from a pitting edema, which was ultimately caused by his diabetes. (*Id.*) Goubran ordered x-rays of

3

Plaintiff's leg and gave him Motrin for the pain, telling him to keep the leg elevated until the swelling subsided. (*Id.*) When Plaintiff again requested to be sent to a hospital, Goubran denied the request without explanation. (*Id.*) Plaintiff was released from the infirmary on November 27, 2012. (*Id.*)

On December 6, 2012, Plaintiff was again admitted to the infirmary for his swollen ankle and was examined by Dr. Goubran. (*Id.*) Goubran ordered antibiotics, anti-inflammatories, and Motrin for Plaintiff, then put Plaintiff in a wheelchair and housed him in the infirmary until January 8, 2013, again denying his request to be sent to a hospital. (*Id.*) Goubran also ordered an M.R.I. of Plaintiff's right foot and ankle, but this order was denied by Defendant Williams, SCI-Rockview's Health Care Administrator, who instead ordered an ultra-sound. (*Id.* at 6.) Goubran informed Plaintiff that the order for an M.R.I. was denied because it would be too expensive. (*Id.*)

Approximately two months later, Plaintiff was evaluated by an orthopedic specialist using a remote video-conference system, who concluded that an M.R.I. was necessary. (*Id.*) Plaintiff was transported to an orthopedic clinic for an M.R.I. on April 16, 2013. (*Id.*) On April 24, 2013, Goubran met with Plaintiff to review the M.R.I. results, and informed him that he had "fragmented brittle bones" and torn ligaments, but that surgery was not necessary. (*Id.*) On May 5, 2013,

4

Plaintiff filed a grievance complaining of his alleged inadequate medical treatment. (*Id.* at 7.) Williams denied his grievance, stating that his treatment had been adequate and that Plaintiff's continued pain was due to his "uncontrolled diabetes." (*Id.*)

On September 23, 2013, Plaintiff filed the instant complaint against several medical professionals and two healthcare corporations. Presently before the court are: 1) a motion to dismiss filed by Defendants Corizon, Doll, and Symons ("Medical Defendants"); 2) a motion to dismiss filed by Defendant Williams; and 3) a motion to dismiss filed by Defendant Wexford. (Docs. 21, 31, 66.) For the following reasons, these motions will all be granted in favor of Defendants.

**II.** **<u>Legal Standard—Motion to Dismiss</u>**

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in the context of Rule 8 "depends on the type of case–some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that the Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (internal quotation marks omitted).

When a complaint lacks sufficient factual allegations to satisfy Rule 8, a defendant may attack the complaint by a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, as well as all reasonable inferences derived therefrom, and view them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d

Cir. 2007); *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 570) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551

U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**III.     Discussion**

In his complaint, Plaintiff alleges that all Defendants violated his rights under the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 1 at 11–13.) In order to state a claim that Defendants' medical treatment violated his Eighth Amendment rights, Plaintiff must allege that each defendant acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 104. This involves two separate requirements: first, Plaintiff must provide evidence to show that his medical needs were in fact serious; and second, Plaintiff must show that Defendants' conduct toward him qualified as deliberately indifferent. *Rouse v. Plantier*, 183 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle*, 429 U.S. at 106). A medical need qualifies as serious where, for example: 1) it "has been diagnosed by a physician as requiring medical treatment," 2) it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention," or 3) the failure to treat the medical need "would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted).

Deliberate indifference, in turn, is more than an "inadvertent failure to

provide adequate medical care," and requires "'obduracy and wantonness' . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Our court of appeals has identified several situations constituting deliberate indifference, including: the denial of reasonable requests for treatment, the intentional refusal to provide care that the authority knows is necessary, the delay of treatment for non-medical reasons, and the erection of arbitrary and burdensome procedural barriers to treatment. *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro* (*MCCII*), 834 F.2d 326, 346–47 (3d Cir. 1987). By contrast, "mere allegations of malpractice" or "disagreement as to the proper medical treatment" do not constitute deliberate indifference. *Id.*

Medical Defendants, Defendant Williams, and Defendant Wexford all argue that Plaintiff has failed to state a claim under the Eighth Amendment.[2] This court will examine the allegations regarding each set of Defendants in turn to

---

[2] Defendant Wexford also alleges that Plaintiff has failed to exhaust his administrative remedies for his claim against Wexford. (Doc. 67 at 5–8.) This court notes that addressing such an argument would require the conversion of Wexford's motion to dismiss into a motion for summary judgment. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (holding that the failure to exhaust remedies is an affirmative defense that must be pleaded and proved by the defendant); *see also* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1366 (3d ed. 2015) ("Once the district court decides to accept matters outside of the pleadings . . . the judge must convert the motion to dismiss into one for summary judgment.") Because this court finds that Plaintiff has failed to state a claim against Wexford, it finds it unnecessary to reach Wexford's exhaustion argument.

9

determine if they are sufficient to state an Eighth Amendment claim.

### A. Medical Defendants' Motion to Dismiss

Medical Defendants contend that, with regard to Drs. Doll and Symons, Plaintiff has failed to allege facts showing that he had a serious medical need or that Defendants were deliberately indifferent to that need. (Doc. 22 at 4–10.) Medical Defendants further argue that Plaintiff cannot bring a claim under § 1983 against Corizon because he has not alleged any facts to show that the actions of Corizon's employees were undertaken pursuant to any corporate policy. (*Id.* at 10–12.) This court will examine the allegations concerning each Medical Defendant in turn to determine if Plaintiff has successfully stated a claim against each defendant.

### i. Plaintiff's Claims Against Dr. Christina Doll

Plaintiff alleges that he first saw Doll on September 11, 2012, due to swelling in his right leg, foot, and ankle. (Doc. 1 at 4.) Plaintiff claims that Doll treated him with intravenous antibiotics, anti-inflammatory medication, and Motrin, and periodic application of ice to the swollen area. (*Id.*) Doll ordered x-rays of his leg, which showed no fracture, and also blood tests. (*Id.*) Nearly two weeks later, Doll informed Plaintiff that they still did not know what was wrong with him, and

that more tests were being conducted. (*Id.*) At that time, Plaintiff requested to be sent to a hospital for emergency care, but Doll denied this request, stating that he was not in an emergency condition. (*Id.*) Plaintiff sets forth no other specific factual allegations concerning Defendant Doll.

When construed liberally, Plaintiff's complaint alleges sufficient facts to show that he had a serious medical need at the time of his treatment by Defendant Doll. The Third Circuit has held that a medical need "that has been diagnosed by a physician as requiring treatment" qualifies as a "serious medical need" for the purposes of an Eighth Amendment claim. *Atkinson*, 316 F.3d at 272–73 (quoting *MCCII*, 834 F.2d at 347). Plaintiff alleges that, upon reviewing his condition, Defendant Doll treated it with various medications and the application of ice, indicating that she diagnosed the condition of his swollen leg as requiring that treatment. (Doc. 1 at 4.) Furthermore, Plaintiff alleges that his swollen leg caused him "a lot of pain," and that it had been swelling periodically over the course of 7 months. (*Id.*) This is enough to show that a layperson would have recognized the need for his condition to be treated by a doctor. *See Atkinson*, 316 F.3d at 273.

Plaintiff's allegations do not, however, indicate that Doll acted with deliberate indifference. Again, Plaintiff alleges that Doll treated him with several medications and ordered diagnostic tests in an attempt to determine what was

11

causing the swelling. (Doc. 1 at 4.) Plaintiff's issue with his treatment by Doll appears to be that she refused to have him transferred to a hospital for emergency treatment when she was unable to determine what was causing the swelling his leg. (*Id.* at 4, 10.) This allegation falls far short of the deliberate indifference standard, as it shows nothing more than that Doll refused to prescribe the course of treatment that Plaintiff preferred. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (recognizing that mere "disagreement as to the proper medical treatment" is insufficient to show deliberate indifference) (quoting *MCCII*, 834 F.2d at 346).

Plaintiff also states that Doll's decision to not send Plaintiff to a hospital was based on purely financial motives. (Doc. 1 at 10.) While the delay of necessary medical treatment for non-medical reasons can, in some circumstances, constitute a violation of the Eighth Amendment, *see MCCII*, 834 F.2d at 347, Plaintiff must allege specific facts that would tend to show that this was in fact the motivation behind Doll's decision, and cannot rely on a mere conclusory statement. *See Iqbal*, 556 U.S. at 663. Because Plaintiff provides nothing more than a bald assertion that Doll's actions were based on financial considerations, this court cannot accept that statement as true for the purpose of deciding Medical Defendants' motion to dismiss.

Furthermore, the Eighth Amendment does not completely bar medical

professionals and healthcare administrators from considering cost as a factor when evaluating treatment options. *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[P]risoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment.") (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)). Thus, even if this court were to accept that cost was a motivating factor in Doll's decision to not send Plaintiff to the hospital, her actions would still fall far short of the kind of "obduracy and wantonness" that characterizes deliberate indifference.

Because Plaintiff has failed to sufficiently allege facts showing that Doll acted with deliberate indifference, this court must dismiss his claim against Doll.

### ii. Plaintiff's Claims Against Dr. John Symons

Plaintiff alleges that, shortly after his treatment by Dr. Doll, Dr. John Symons called Plaintiff to his office to discuss medication renewals. (Doc. 1 at 4–5.) Plaintiff informed Symons that he was still experiencing a lot of pain in his ankle and that the swelling was worse, and he again requested to be sent to a hospital or an orthopedic clinic. (*Id.*) Symons denied this request, and responded that Plaintiff seemed to have gout and ordered a cane for him to aid his ability to walk.

(*Id.*)  Plaintiff makes no other specific factual allegations concerning Symons.

As discussed above, Plaintiff alleges sufficient facts to show that he had a serious medical need at the time of his consultation with Dr. Symons.  (*See supra* Part III.A.i.)  However, his allegations are insufficient to show that Symons acted with deliberate indifference toward those needs.  Plaintiff's allegations show that Symons made a medical judgment regarding the likely cause of Plaintiff's condition and ordered a cane for Plaintiff to alleviate the problems caused by his condition.  Plaintiff's allegations thus reflect little more than a disagreement over the treatment prescribed by Symons, which is not actionable under the Eighth Amendment.  *See Spruill*, 372 F.3d at 235.  Plaintiff also makes conclusory statements that Symons acted based on impermissible financial concerns.  (Doc. 1 at 10.)  As with Plaintiff's allegations against Dr. Doll, this allegation is conclusory.  Even if the court were to accept Plaintiff's allegation, it falls far short of the kind of financial-based decision making that constitutes deliberate indifference.  *See Winslow*, 406 F. App'x at 674.

### iii. Plaintiff's Claims Against Corizon

The only allegation Plaintiff specifically makes against Corizon is that it "is a privately owned health care provider that, during all relevant times, was contractually responsible for providing on-site health care service to inmates at SCI-Rockview."  (Doc. 1 at 2.)  It thus appears that Plaintiff is attempting to base his

14

claim against Corizon on a theory of vicarious liability, which is impermissible in a suit filed under § 1983. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Instead, in order to hold Corizon liable for the actions of its employees, Plaintiff would need to allege facts showing that Corizon's employees violated Plaintiff's Eighth Amendment rights while acting according to the policies or customs of Corizon. *Id.* at 583–84. Under this doctrine, a "policy" refers to a "final proclamation" made by a "decisionmaker" who has "final authority" within the organization. *Id.* at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A "custom" refers to an act "'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

  Medical Defendants argue that Plaintiff has not alleged sufficient facts to show his Eighth Amendment rights were violated due to any policy or custom of Corizon. (Doc. 22 at 10–12.) The court agrees. Plaintiff makes only a conclusory statement that the acts of the individual Defendants were "directed by and in accordance with the policies, practices, and customs implemented by or ratified by [] PHS correctional Healthcare, Corizon, and Wexford." (Doc. 1 at 11.) Such a statement is, on its own, insufficient to establish that the actions of the individual

15

Defendants were in fact directed by Corizon's policies. *See Iqbal*, 556 U.S. at 678. Furthermore, even if this court were to accept this conclusory statement as true for the purposes of deciding this motion, Plaintiff's claim against Corizon would nonetheless fail because Plaintiff is unable to point to any act by Corizon's employees that constitutes a violation of his Eighth Amendment rights.

For these reasons, the court will dismiss Plaintiff's claim against Corizon.

### B. Defendant Williams's Motion to Dismiss

Plaintiff alleges that, on or around January 8, 2013, Dr. Goubran ordered an MRI to be conducted on Plaintiff's right foot and ankle in order to diagnose what was causing the swelling. (Doc. 1 at 6.) Plaintiff claims that Defendant Williams, in his role as Health Care Administrator for SCI-Rockview, declined to order the MRI and ordered an ultra-sound instead. (*Id.*) Plaintiff claims that Dr. Goubran told him that this was done because the MRI would have been too costly. (*Id.*) Plaintiff claims that on May 5, 2013, he filed a grievance concerning the lack of effective treatment he had been given for his swollen leg. (*Id.* at 7.) Plaintiff claims that Williams denied his grievance, and wrote in his official response that Plaintiff had been given adequate treatment and that the pain he was experiencing was a result of his non-compliance with his prescribed treatment for his

diabetes. (*Id.* at 7–8.) Plaintiff makes no other specific factual allegations concerning Williams.

Williams argues that Plaintiff has failed to adequately allege facts showing that he acted with deliberate indifference toward Plaintiff's serious medical needs. (Doc. 32 at 3–8.) Williams contends that Plaintiff's allegations "amount to nothing more than a disagreement regarding his medical care," and further argues that that, as a non-physician, Williams was entitled to rely on the professional judgment of the physicians who were treating Plaintiff. (*Id.* at 7–8.) The Third Circuit has held repeatedly that non-physician prison officials do not violate the Eighth Amendment by failing to intervene in a prisoner's ongoing medical treatment when that prisoner complains that the treatment is inadequate, as those officials are entitled to rely on the medical judgment of professionals. *See, e.g., Spruill*, 372 F.3d at 236; *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Thus, Plaintiff cannot rely on Williams's failure to take action after reviewing his grievance to show that he acted with deliberate indifference toward Plaintiff's serious medical needs.

Williams appears to ignore Plaintiff's other basis for his claim: that Williams delayed Plaintiff's medical treatment for non-medical reasons when he denied the MRI that Dr. Goubran had ordered and instead ordered an ultrasound to

17

be conducted on Plaintiff's swollen leg. (Doc. 1 at 8–9.) However, this basis for Plaintiff's claim is also fatally flawed. As explained above, prisoners do not have a constitutional right to receive unlimited medical treatment without any consideration of the cost involved. *See Reynolds*, 128 F.3d at 175. Williams's attempt to save costs by ordering a cheaper diagnostic test does not, on its own, rise to the level of reckless and wanton behavior prohibited by the Eighth Amendment. *See, e.g.*, *Gould v. Wetzel*, 547 F. App'x 129, 132 (3d Cir. 2013) (holding that plaintiff failed to state an Eighth Amendment claim where plaintiff alleged that medical staff did not render proper hernia treatment due to cost-saving considerations); *Brown v. Beard*, 445 F. App'x 453, 455–56 (3d Cir. 2011); *Winslow*, 406 F. App'x at 674; *cf. Natale*, 318 F.3d at 580 (holding that a reasonable jury could find defendants violated the Eighth Amendment where prison was incapable of providing inmate with necessary insulin for 21 hours after his incarceration due to budgetary constraints).

Because Plaintiff's allegations do not show that Williams acted with deliberate indifference, Williams's motion to dismiss will be granted.

### C. Wexford's Motion to Dismiss

Plaintiff's only specific factual allegation concerning Defendant Wexford is that Wexford "is a privately owned health care provider that, during all

relevant times, was contractually responsible for providing on-site health care service to inmates at SCI-Rockview." (Doc. 1 at 3.) Thus, Plaintiff appears to base his claim against Wexford, like his claim against Corizon, on a theory of vicarious liability, which is impermissible in a suit filed under § 1983. *See Natale*, 318 F.3d at 583. As explained above, to state a claim under § 1983 against a corporate entity, Plaintiff would need to allege facts showing that Wexford's employees violated Plaintiff's Eighth Amendment rights while acting according to the policies or customs of Wexford. *Id.* at 583–84.

Plaintiff's only allegation concerning such a policy or custom is his conclusory statement that the actions of the individual Defendants "were directed by and in accordance with the policies, practices, and customs implemented by or ratified by [] PHS correctional Healthcare, Corizon, and Wexford." (Doc. 1 at 11.) As explained above, this statement is both insufficient to allege the existence of such a policy, and Plaintiff has also failed to sufficiently allege that the actions of any of Wexford's employees violated his Eighth Amendment rights. *(See supra* Part III.A.iii.) Because Plaintiff has thus failed to state a claim against Corizon, this court will grant Corizon's motion to dismiss.

**IV.     Conclusion**

For the reasons stated above, this court will grant Defendants' motions to dismiss against Plaintiff. Plaintiff will be granted thirty days to amend the complaint to attempt to state a claim against Defendants, should he so desire. Plaintiff is advised that any proposed amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. *See Young v. Keohane*, 809 F. Supp. 1185, 1189 (M.D. Pa. 1992).

An appropriate order will follow.

s/Sylvia H. Rambo<br>
United States District Judge

Dated: October 7, 2015.